ROSETTA S. CARVER, ADMINISTRATRIX, v. THE DETROIT
& SALINE PLANK-ROAD COMPANY.[1]

[See 61 Mich. 584.]

*Plank-road company—Negligence—Failure to erect barrier along
highway — Contributory negligence—Questions of fact —
Evidence.*

1. The defendant, in accepting its franchise, assumed the duty of
   keeping its way in repair, and its charter, when made was sub-
   ject to all future reasonable and proper police regulations
   enacted for the protection of the lives and health of the people,
   and the prevention of injury thereto.
2. Direct or conclusive evidence is never necessary to show the exer-
   cise of reasonable care. If the circumstances out of which the
   injury or act complained of occurred tend to show such care,
   the question of its exercise is for the jury, and it must be an
   extraordinary case that will justify the court in taking it from
   them.
3. Upon the facts of this case the *degree* of care defendant was
   called upon to observe was such as to include acts of omission as
   well as commission, and made preventive action necessary.
   When the danger is such as to imperil human safety, the care
   required is such as may be reasonably regarded as sufficient to
   prevent the probability of mischief.

Error to Wayne. (Jennison, J.)  Argued October 13 and
14, 1885.   Decided October 28, 1885.

Case.  Plaintiff brings error.  Reversed.  The facts are
stated in the opinion.

*Parker & Burton* (*John Ward*, of counsel), for appellant.

*C. A. Ke t*, for defendant.

───────────────────────────────

[1] By an oversight this opinion was not published in its proper
order.

SHERWOOD, J.   The defendant in this case is a corporation organized under a charter and the general plank-road act of 1848.   See Laws of 1848, p. 110; How. Stat. p. 914.   Its road is constructed on the highway from Detroit to Saline.   This highway has been in existence and used more than 40 years, and was so used many years before the defendant's plank-road was constructed.   A part of defendant's road runs along and near the bank of the River Rouge.   The traveled part of the road is here about 25 feet wide, lying between the Michigan Central Railroad track and the south bank of the river, which is from 20 to 25 feet high, with a steep descent to the waters.   From the center of the road to the edge of the river is about 70 or 75 feet.   There is no fence or other barrier along the river bank.

The husband of the plaintiff in this case was drowned at this point on the evening of the seventh of September, 1883. The evidence in the case tends to show that he was returning to his home from a trip to Detroit with a horse and skeleton buggy, and on arriving at the place above mentioned his horse became frightened and unmanageable, and in his wild and excited movements went over the bank into the river, carrying the wagon and driver with him.   Mr. Carver was found dead in the river next morning, and the horse and wagon were taken out at the bank opposite uninjured.   No person saw the occurrence or its incidents until morning; and the manner of Carver's death is shown only by the proof of his condition in the evening before he reached the fatal spot, and the indications which were observed at the time the body was taken from the river, in the road, and upon the line the horse took down the bank to the water.

The plaintiff was duly appointed administratrix of the estate of the deceased, and as such brings this suit for the loss she has sustained in the death of her husband, which, as she alleges, was caused through the negligence and carelessness of the defendant in not erecting and continuing in

good repair a suitable fence, or other barrier, between the river bank and traveled portion of the highway to prevent accidents and injuries of the kind complained of.

The evidence, we think, tends strongly to show that the place where the accident occurred was a dangerous one, and required proper attention by the parties whose duty it was to keep the highway in proper repair at that point; and it must be conceded, I apprehend, that the obligation to make safe this public way, at the time of the accident, rested upon this defendant. It assumed this duty when it accepted its franchise and constructed its road. Whether or not the company was negligent in the discharge of that duty at the place where the injury took place, and that in consequence of such neglect the drowning of the plaintiff's husband occurred, without fault upon his part, were the questions to be determined in the case.

The circuit judge held, under the testimony given, the plaintiff could not recover, and directed a verdict for the defendant.

We are unable to agree with the learned circuit judge in his ruling, and are all of opinion the case should have been given to the jury. It is true, the evidence was largely circumstantial; but it appears to have been the best attainable, and the inferences and conclusions to be drawn therefrom were peculiarly within the province of the jury.

There is no question but that the accident occurred at the time and place alleged. The testimony showed the situation of the plank-road, with reference to the river, its bank, and the declivity where the horse went down. The tendency of all the testimony was to the effect that, in consequence of the near proximity of the road to the river, the place was a dangerous one, and this view is greatly strengthened by the fact that several injuries had previously occurred there.

It is not necessary in this case to consider the extent of the duty of the defendant, either at common law or under its

charter, in this class of cases. It is enough that under the general statutes of this State, passed in 1877, it was made the duty of the defendant to erect the barrier against the danger which overtook the plaintiff's husband at this place, therein provided for. Laws of 1877, pp. 135, 136, §§ 5, 8.

It is claimed, however, that this statute does not apply to the defendant, inasmuch as its charter is made unalterable for a period of 30 years. But this position is of no force, even though the defendant may have existed less than that length of time. All charters of this kind must be regarded, when made, as subject to all such future police regulations as may be enacted which are reasonable and proper for the protection of the lives and health of the people, and the prevention of injury thereto, and this statute has no other object in view, and does no more.

It raises a legal duty on the part of the company if it did not exist before, and which the evidence shows the defendant has failed to discharge.

It only remains now to consider, was the plaintiff's husband negligent on the occasion of the injury, and, if so, did it contribute to the injury which occurred? Was there any testimony tending to show that fact? The evidence tended to show Mr. Carver was a healthy, strong man; was returning to his home at a reasonable hour; that he was sober (for we must take the plaintiff's testimony upon this subject); that his horse was gentle and kind, and easily managed; that he was accustomed to the use of horses, and skillful in their management; and that the tracks of the animal in the road, and upon the river bank, bore indications of excitement and trouble. These were all significant facts bearing upon the inquiries involved in this case.

What care was exercised by the husband of the plaintiff on the occasion of that fatal drive as he approached the dangers resulting in his death, on that dark night, can never be positively known. No one was present to witness the efforts

he made, or the skill he used, in trying to avoid the perils from which he failed to escape. We can only learn them from the circumstances disclosed in the proofs, and which were sufficient to go to the jury upon the point of his contributory negligence. *Teipel v. Hilsendegen,* 44 Mich. 461 (7 N. W. Rep. 82). The responsibility of determining whether he was guilty of such negligence as would defeat the plaintiff's recovery rested with the jury under the evidence given.

Direct or conclusive evidence is never necessary to show reasonable care. If the circumstances out of which the injury or act complained of occurred tend to show such care, the question is for the jury, and it must be a very extraordinary case that will justify the court in taking it from them. *Billings v. Breinig,* 45 Mich. 65 (7 N. W. Rep. 722); *Brower v. Edson,* 47 Id. 91 (10 N. W. Rep. 121); *Teipel v. Hilsendegen, supra; Hassenyer v. Mich. Cent. R. R. Co.,* 48 Mich. 205 (12 N. W. Rep. 155).

The strong tendency of the testimony is to show the defendant did not exercise the care required by statute, or ordinary prudence. The degree of care it was called upon to observe was such as to include acts of omission as well as those of commission. It made preventive action necessary.

When the danger is such as to imperil human safety, the care required should be such as may be reasonably regarded as enough to prevent the probability of mischief. The jury should have been left to determine what care was extended by the defendant, as well as the caution exercised by the plaintiff's husband, under proper instructions from the court.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.